UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MICHAEL W. NOLAND                                                               PLAINTIFF

v.                                           CIVIL ACTION NO. 3:03CV-482-S

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA            DEFENDANT

**MEMORANDUM OPINION**

This matter is before the court on cross-motions of the parties for summary judgment (DNs 18, 19) in this action for alleged wrongful denial of benefits under Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132.[1] This action arose from the termination of the payment of long-term disability benefits to the plaintiff, Michael W. Noland.

Noland was employed as a Quality Auditor for KPMG Peat Marwick LLP. Noland was an eligible employee under KPMG's employee long-term disability policy provided by the defendant, The Prudential Insurance Company of America. Under the policy, an eligible employee would be under a "total disability" when Prudential determined that all of the following conditions were met:

(1) Due to Sickness or accidental injury, both of these are true:

> (a) You are not able to perform, for wage or profit, the material and substantial duties of your occupation.
>
> (b) After the Initial Duration of a Period of Total Disability, you are not able to perform for wage or profit the material and substantial duties of any job for which you are reasonably fitted by your education, training or experience. The Initial Duration is shown in the Schedule of Benefits.

(2) You are not working at any job for wage or profit.

(3) You are under the regular care of a Doctor.

---

[1] This action was removed from the Jefferson County, Kentucky, Circuit Court under both our federal question and diversity jurisdiction. There is apparently no question that this is a self-funded plan qualifying under the terms of ERISA, and jurisdiction has not been challenged.

Employee Long Term Disability Coverage Policy, LTD R 1018 (2-47), pg. 1.

In October, 2000, Noland was hospitalized for pneumonia and was unable to work for a number of months. He was hospitalized again in late December, 2000. On January 17, 2001, Noland applied for disability benefits under the Prudential policy. His physician stated in Noland's application that bilateral pneumonia and respiratory failure were the illnesses or symptoms that caused him to stop working. He indicated that the usual duration of the condition was one month. The statement also indicated under "other medical history" that Noland had had "acute myocardial infarction 4/00" and "depression 3/00." 01/17/01 Attending Physician's Statement.

On June 21, 2001, Noland's application for long-term disability benefits was approved by Prudential. Noland applied for and was awarded Social Security disability benefits. The award was made in May of 2002, and determined that Noland's disability had commenced December 22, 2000 (May 31, 2002 Social Security Notice of Decision).

On January 31, 2002, Prudential notified Noland that it was discontinuing his disability benefits as of May 1, 2002, and documenting its reasons for the denial of further benefits. Noland appealed, and on April 1, 2002, Prudential notified Noland by letter of its review and its reasons for upholding its earlier decision.

Noland again appealed. In conducting a second review, Prudential had Dr. Howard Kipen, an outside physician specializing in occupational medicine, review the medical records. On August 2, 2002, Dr. Kipen submitted an extensive and detailed report of his review and impressions to Prudential. As some of the impressions contained in Dr. Kipen's report contradicted some of Noland's treatment providers' statements, copies of Dr. Kipen's report were sent to Noland's attending physician, Dr. Garner, and his pain management physician, Dr. Geevarghese. Both doctors declined to comment on Dr. Kipen's report. On September 30, 2002, Prudential sent Noland another letter upholding its decision and citing its review of the records and the independent evaluation conducted by Dr. Kipen. The letter stated, in conclusion, that "[w]hile we have taken the

opinions of your physicians into consideration, our review of the medical file, in conjunction with Dr. Kipen's file review, does not document a current sickness or injury that would prevent you from performing your occupation while continuing with treatment for your symptoms." September 30, 2002 letter, pg. 3.

Noland sought another review of the decision. Prudential again reviewed all of the records and had an in-house clinical review performed by Dr. Albert Kowalski prior to issuance of a final decision. Noland was then notified by letter on June 23, 2003 explaining the reasons that the decision denying benefits would be upheld. In reaching the conclusion to uphold the denial, Prudential noted that it had reviewed all information in the file, including documentation provided for the purpose of appeal. June 23, 2003 letter, pg. 3.

Noland has urged nothing to countermand the argument that the policy language permitting a determination of "total disability" only "when Prudential determines that all of these conditions are met..." reserves to discretionary authority for Prudential. *Perez v. Aetna Life Insurance Co.,* 150 F.3d 550 (6th Cir. 1998). As such, in accordance with *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, 109 S.Ct. 948, 954-955, 103 L.Ed.2d 80 (1989), the court must apply the highly deferential "arbitrary and capricious" standard of review where the plan administrator has been given discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *See, Yeager v. Reliance Standard Life Insurance Company,* 88 F.3d 376 (6th Cir. 1996); *Miller v. Metropolitan Life Insurance Company*, 925 F.2d 979 (6th Cir. 1991). If Prudential's denial of benefits is rational in light of the plan's provisions; that is, if it is possible to offer a reasoned explanation, based upon the evidence, for the outcome, then the outcome is not arbitrary and capricious. *Yeager,* 88 F.3d at 381; *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989).

Noland contends that "[a] real or at least an apparent conflict of interest exists in this case where the determination to terminate Mr. Noland's benefits was made by an insurance company and

not by Mr. Noland's employer particularly where the insurance company was responsible for the payment of the disability benefits." Noland Motion for Summary Judgment, pg. 31.  In evaluating the discretion exercised by an administrator operating under a conflict of interest, the court must weigh the conflict as a factor in determining whether there is an abuse of discretion.  *Firestone Tire & Rubber Co.*, 109 S.Ct. at 956.  However, the bald assertion that Prudential is guilty of unfair claims settlement practices and arbitrary and capricious decisionmaking is belied by the evidence of the extent to which Prudential went in determining and then reviewing the determination to deny further benefits.  In addition to in-house clinical review of the medical records, Prudential employed an outside physician specializing in occupational medicine to conduct an independent review.  Additionally, when the independent review yielded opinions differing from those of treating physicians, those physicians were provided the independent report and were asked to comment on the conclusions.  Finally, Prudential paid Noland benefits for approximately one year.  As in *Peruzzi v. Summa Medical Plan*, 137 F.3d 431, 433 (6th Cir. 1998), there is no evidence here that Prudential was motivated by cost, nor that it otherwise acted in bad faith.

The series of criticisms leveled at Prudential's evaluations of Noland's claim of continued total disability essentially amounts to an assertion that Prudential should have accepted the conclusions of a number of Noland's treating physicians and concluded that his physical and psychological problems rendered him totally disabled.  However, the court is limited to an inquiry into whether it is possible to offer a reasoned explanation for the denial of benefits in light of the evidence.

The January 31, 2002 letter informing Nolan that his benefits would cease as of May 1, 2002 indicated that pneumonia and respiratory failure, the conditions which caused his mot stop working, presented closed periods of disability from which he had recovered.  Prudential stated that there was no medical evidence of an ongoing pulmonary condition or cardiac impairment that would prevent

him from returning to work. It was also noted that although he indicated that he suffered from anxiety and depression, there was no medical evidence of a disabling cognitive impairment.

Noland's appeal of the January decision was accompanied by statements from Dr. Garner, Dr. Dao, and Dr. El-Asyouty, as well as a January 2002 pulmonary function report and a February 2002 sleep study.. The April 1, 2002 letter affirming the denial of benefits acknowledges receipt of these additional items and addresses each item in turn.

Prudential did not accept Dr. Garner's conclusion that "Mr. Noland suffers from disabling fatigue as a result of all or one of his major medical problems. This extreme fatigue prevents him from employment in any occupation. His fatigue is unfortunately a chronic medical condition." 3/5/02 Garner letter. Prudential explained that "[i]n January you were seen by a cardiologist, Dr. Joseph, who indicated there appears to be no overt cause for your acute symptoms of shortness of breath and fatigue, nor is there any evidence of significant pulmonary hypertension to suggest a secondary pulmonary etiology. The January, 2002, pulmonary function test indicates mild restriction." 4/1/02 Prudential letter.

Prudential did not accept Dr. Dao's conclusion that "[t]he Sleep Study done on 2/16/02 confirms severe obstructive sleep apnea syndrome. This requires BiPap treatment to correct hypoxemia during sleep. He also has a history of bypass surgery. His job requires traveling and this is difficult for him the [sic] carry the BiPap machine with him. With the combination of cardiopulmonary disease he deserves disability." 2/21/02 Dao letter. Prudential stated that "[t]he January, 2002, pulmonary function test indicates mild restriction. The medical records indicate severe sleep apnea for which you are using a BiPap machine. There is no indication that your sleep apnea is not under control with the use of the BiPap. Further, the BiPap machine is portable and adaptable to travel." 4/1/02 Prudential letter.

Prudential did not accept the conclusion of Dr. El-Asyouty that "I believe patient is genuinely depressed and it was my recommendation with the treatment team to have patient apply

- 5 -

for disability because of devastating effect of work on his condition." 2/14/02 El-Asyouty letter. Prudential indicated that Dr. El-Asyouty's statement that Noland was suffering from Major Depressive Disorder, and Severe and Post Traumatic Stress Disorder and depression was inadequately documented. Prudential also noted that Noland had been treated for depression for several years while he continued to work, and that there was no documentation of a significant change in his mental condition that would preclude him from working while continuing with treatment. 4/1/02 Prudential letter.

Noland submitted a second request for reconsideration of the denial of benefits. He submitted an Attending Physician Statement ("APS"), pulmonary function reports, medical equipment receipts and a current list of medications.

Prudential submitted all of the medical records to Dr. Kipen who concluded that "Mr. Noland suffers from identified medical problems without identified medical limitations that would come close to making him disabled...Dr. Garner's own APS from 4/9/02 seems to indicate that Mr. Noland could perform sedentary work without restrictions, and I see no medical restrictions for Mr. Noland in terms of sedentary work." Kipen Report, pg. 6. Dr. Garner's Attending Physician Statement of 4/9/02 is dated after his letter indicating that Noland suffers from disabling chronic fatigue. Dr. Kipen found that a number of Dr. Garner's conclusions concerning Noland's medical conditions were incorrect, citing instead to test results of the conclusions of other specialists. See, Kipen Report, pgs. 4-7. Dr. Garner was provided a copy of Dr. Kipen's report and was asked by Prudential for comments on his findings. Dr. Garner did not respond. 9/30/02 Prudential letter, pg. 2.

Similarly, Dr. Kipen did not find evidence in the record to support Dr. Dao's conclusion that Noland's cardiopulmonary problems coupled with having to carry a CPAP/BiPap machine rendered him disabled. Dr. Kipen noted that many traveling executives carry such machines. Even so, Kipen opined that he would not be disqualified from sedentary work due to such conditions.

With regard to pain management, Dr. Kipen noted that Noland had been discharged from rehabilitation for neck and back pain with the ability to sit for 20 minutes without pain, his chronic pain appeared to be well-managed with an intravenous morphine pump, and Dr. Garner's APS indicated that Noland had the ability to perform sedentary work. Dr. Geevarghese, Noland's pain management physician, was asked to comment on the Kipen Report. While he opined that chronic pain can be disabling, he did not draw any conclusions about Noland's claimed disability. He stated that he was not qualified to make disability determinations and declined to comment on Dr. Kipen's report. He stated "[I]n Mr. Noland's case, if we can keep his pain under control to enable him to carry on with daily chores of living then that would be great. I doubt that he would have this relief if he returns to work. That is my opinion. There is no test I can do to prove this, only a trial would tell. That call is up to you." 9/17/02 Geevarghese letter. The letter was considered, but did not change Prudential's decision to accept Dr. Kipen's opinion.

Prudential accepted Dr. Kipen's opinion that there was insufficient documentation to substantiate a significant change in mental condition which would preclude him from simultaneously working and receiving psychiatric treatment. Dr. El-Asyouty was provided a copy ofCed Dr. Kipen's report and was asked for comment. He responded by letter on September 19, 2002 making virtually the same statements as his earlier letter. He simply states that Noland suffers from severe depression, and that "[i]t is showed [sic] in the chart that the patient will be doing well when off work and then excited to go back to work and after working for a few days he gets severely anxious and depressed." 9/19/02 El-Asyouty letter. The letter indicates that Noland witnessed an atrocity in India which has caused him to suffer Post Traumatic Stress Disorder. However, none of the other matters raised by Dr. Kipen were addressed. There are no limitations from his psychiatric condition which are linked by Dr. El-Asyouty to Noland's work. There is nothing about treatment, duration, physiologic manifestations, maximum improvement, narcotic status, goals of therapy, all of which

- 7 -

were raised in the Kipen Report, pg. 7. Thus Prudential reiterated its conclusion that the documentation did not support a current disabling mental impairment. 9/30/02 Prudential letter.[2]

Noland sought a third review of the denial of benefits. He submitted a copy of the letter approving his request for Social Security disability benefits, records from his April 12, 2000 hospitalization, an evaluation letter from Dr. Dao to Dr. Watkins, and a variety of medical records from 2003. In his request for reconsideration, Noland noted that he continued treatment with Dr. El-Asyouty, he underwent an endartectomy for carotid stenosis and that he was found to have masses in his lung and thyroid.

Prudential submitted the medical records to its in-house physician, Dr. Kowalski, for another review with particular focus on the newly submitted evidence. After reviewing the records, Dr. Kowalski concurred in the earlier decision to uphold the denial of benefits, finding that the additional materials submitted by Noland did not alter the appropriateness of the decision. On June 23, 2003, a final letter upholding the decision to terminate benefits was sent to Noland. The letter carefully documented the basis for the original decision, and the grounds for upholding the decision at all of the subsequent stages of review. It also addressed the newly submitted materials. Relying on the evaluation of Dr. Kowalski, Prudential stated that

> Included on appeal is a February 26, 2003 letter from Dr. Dao [to Dr. James M. Watkins] indicating impairment due to severe restrictive lung disease and severely abnormal PFTs. The PFTs in file, dated January 8, 2002 revealed only mild disease, and the February 14, 2003 CT scan did not reveal significant pathology. Changes noted in the CT scan included mediastinal lymphoadenopathy, bibasilar airspace opacity and a 5 mm pulmonary nodule. Although Dr. Dao opines as to Mr. Noland's level of impairment, the changes on the CT scan are not significant to account for the reported symptoms of shortness of breath or a need for oxygen.

---

[2] Noland suggests because Dr. Kipen stated that "[a]n evaluation of the record by a psychiatrist or pain specialist may be indicated," (Kipen Report, pg. 8) that Prudential had a duty to pursue other independent investigation and evaluation of the records before denying benefits. However, as Dr. El-Asyouty did not provide sufficient substantiating information in response to Prudential's inquiry, Noland would be hard-pressed to show that Prudential had a duty to investigate an insufficiently documented condition. Indeed, Noland has provided no citation of authority for any such proposition.

6/23/03 Prudential letter. Prudential noted that its determination of eligibility for benefits is based on separate criteria from that used by the Social Security Administration. Thus the determination to deny benefits was based on the terms of the policy without regard to the Social Security Administration's determination. Finally, the additional procedure and hospitalization of Noland during 2003 while clearly temporarily disabling, did not substantiate a finding of total disability under the policy.

As evidenced by the evaluative process recited above, the decisions of Prudential to deny Noland further benefits under the plan were not arbitrary and capricious, but rather were throughly investigated and reasonably substantiated by specific citation to medical findings. Each stage of review afforded to Noland was complete and the decision carefully documented. It cannot be said that the outcome lacks a reasonable basis in light of the evidence.

The motion for summary judgment of Prudential will be granted. The motion for summary judgment of Noland will be denied. A separate order will be entered herein this date in accordance with this opinion.